## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF CONNECTICUT
### (Bridgeport Division)

| | |
|---|---|
| In re | CHAPTER 7 |
| FIRST CONNECTICUT CONSULTING GROUP, INC.<br>　　　　　Debtor. | CASE NO. 02-50852 (AHWS) |
| RICHARD M. COAN, Chapter 7 Trustee<br>Of First Connecticut Consulting Group, Inc.,<br>and RONALD I. CHORCHES, Chapter 7<br>Trustee of James J. Licata,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>ARENT FOX, PLLC and<br>BUCHANAN INGERSOLL & ROONEY, PC,<br><br>　　　　Defendants. | ADV. PRO. NO. 10-05010<br><br><br><br><br><br><br><br><br><br>APRIL 14, 2010 |

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT ARENT FOX LLP'S MOTION TO DISMISS

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................................ 1

PROCEDURAL HISTORY............................................................................................. 2

RELEVANT FACTS ...................................................................................................... 3

    The Parties ............................................................................................................. 3

    The Bankruptcy Court-Ordered Sale to SWJ.............................................................. 3

    SWJ's Default ......................................................................................................... 4

    The Claims ............................................................................................................. 5

ARGUMENT ................................................................................................................ 6

    I.      The Complaint Should Be Dismissed In Its Entirety ...................................... 6

          A.      The First, Second and Third Claims For Relief
                    Fail Because The Plaintiffs are Precluded From
                    Litigating Issues Resolved By Previous Order of This Court ........... 8

          B.      The First, Second And Third Claims for
                    Relief Fail Because Plaintiffs Do Not Properly
                    Allege That Arent Fox Caused Them Any Harm........................... 16

          C.      The First, Second and Third Claims for Relief Fail
                    Because the Plaintiffs Do Not Have Standing to Assert Them ....... 18

          D.      The Fourth Claim for Relief Fails
                      Because N.Y. Judiciary Law § 487
                      Does Not Apply To Litigation In Connecticut ............................... 19

Conclusion ................................................................................................................ 20

# TABLE OF AUTHORITIES

**Cases**                                                                                                                                                           **Page**

Apace Commc'ns, Ltd. v. Burke,
522 F.Supp.2d 509 (W.D.N.Y. 2007) ...................................................................6

Ashcroft v. Iqbal,
_ U.S. _, 129 S.Ct. 1937, 1949 (2009).......................................................7, 16

ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,
493 F.3d 87 (2d Cir. 2007)..................................................................................6

Bell Atl. Corp. v. Twombly,
550 U.S. 544, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007).......................6, 7, 17, 18

Chien v. Skystar Bio Pharms. Co.,
566 F. Supp.2d 108 (D. Conn. 2008) ...................................................................7

Commodity Futures Trading Comm'n. v. Weintrab,
471 U.S. 343 (1985)..........................................................................................10

In re Community Hosp. of Rockland County,
15 B.R. 785 (Bankr. S.D.N.Y. 1981).................................................................10

Conley v. Gibson,
355 U.S. 41, 78 S.Ct. 99, 2 L.Ed. 2d 80 (1957)...................................................6

Cortec Indus., Inc. v. Sum Holding L.P.,
949 F.2d 42 (2d Cir. 1991), cert. denied, 503 U.S. 960 (1992) ............................7

Evans v. Ottimo,
469 F.3d 278 (2d. Cir. 2006)..............................................................................9

Freschi v. Grand Coal Venture,
564 F.Supp. 414 (S.D.N.Y. 1983) .....................................................................16

Furlong, M.D. v. Long Island Coll. Hosp.,
710 F.2d 922 (2d Cir. 1983)...............................................................................7

Gekas v. Pipin (In re Met-L-Wood Corp.),
861 F. 2d 1012 (7th Cir. 1988) ...........................................................................8

Hirsch v. Arthur Andersen,
72 F.3d 1085 (2d Cir. 1995)..............................................................................10

## TABLE OF AUTHORITIES
### (cont'd)

**Cases (cont'd)**                                                                      **Page**

Interoceanica Corp. v. Sound Pilots, Inc.,
107 F.3d 86 (2d Cir. 1997)..................................................................................9

Leeds v. Sealove,
No. 87 Civ. 3024, 1988 WL 83401, at *1 (S.D.N.Y. July 28, 1988)..................................16

Martin v. O'Conner,
225 B.R. 283 (N.D.N.Y. 1998) .........................................................................9

Mayer v. Biafore, Florek & O'Neill,
245 Conn. 88, 713 A.2d 1267 (Conn. 1998).......................................................16

Padula v. Lilarn Props. Corp.,
84 N.Y.2d 519, 644 N.E.2d 1001 (N.Y. 1994) ...................................................16

Pani v. Empire Blue Cross Blue Shield,
152 F.3d 67 (2d Cir. 1998), cert. denied, 525 U.S. 1103 (1999) ..........................................7

Purdy v. Zeldes,
337 F.3d 253 (2d Cir. 2003)...............................................................................9

Rothman v. Gregor,
220 F.3d 81 (2d Cir. 2000)...............................................................................7

Schertenleib v. Traum,
589 F.2d 1156 (2d Cir. 1978)...........................................................................19

Shearson Lehman Hutton, Inc. v. Wagoner,
944 F.2d 114 (2d Cir. 1991).............................................................................19

Smith v. Local 819 I.B.T. Pension Plan,
291 F.3d 236 (2d Cir. 2002).........................................................................6, 7

Taylor v. Sturgell,
553 U.S. 880 (2008).......................................................................................10

Wolf v. Weinstein,
372 U.S. 633, 649-652 (1963) .........................................................................10

# TABLE OF AUTHORITIES
### (cont'd)

**Statutes and Rules**        **Page**

Federal Rules of Civil Procedure

     Rule 9(b) ........................................................................................... 1

     Rule 12(b)(1) ..................................................................................... 1

     Rule 12(b)(6) .............................................................................. 1, 6, 7

     Rule 60(b) ........................................................................................... 9

Federal Rules of Bank Procedure

     Rule 7009 ........................................................................................... 1

     Rule 7012(b) ..................................................................................... 1

N.Y. Judiciary Law

     Section 487 ................................................................................ 2, 5, 19

Defendant Arent Fox LLP ("Arent Fox") by and through its undersigned counsel, Foley & Lardner LLP and Murtha Cullina LLP, submits this Memorandum of Law in support of its motion to dismiss the Verified Complaint (the "Complaint") pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6) and 9(b) as made applicable to this action pursuant to Federal Rules of Bankruptcy Procedure 7012(b) and 7009.  Defendant Buchanan Ingersoll & Rooney PC is submitting a parallel motion to dismiss ("BIR's Motion"), and to the extent indicated <u>infra</u>, Arent Fox joins in and adopts portions of that motion.

## PRELIMINARY STATEMENT

This action proves the maxim that no good deed goes unpunished.  After years of hard and excellent (and still largely uncompensated) work, which resulted in a multi-million dollar benefit to its clients, Arent Fox is accused in this malpractice action of somehow damaging those clients, in unspecified ways, by not obtaining a better recovery for them—despite the fact that any better recovery was illusory, and there is no sufficient allegation that there was actually any better recovery to be had.  The action is brought by Plaintiffs, trustees of two Debtors (former clients of Arent Fox) in two related bankruptcy cases that are still pending before this Court.  As we will demonstrate, the first three claims set forth in the Complaint should be dismissed for three independent reasons: first, those claims fail because the Plaintiffs are precluded from litigating issues resolved by previous orders of this Court; second, because the Plaintiffs have not plausibly alleged that the Debtors suffered any harm based on any alleged malpractice (much less that Arent Fox was the proximate cause of any such alleged harm); and third, the Trustees do not have standing to prosecute the claims alleged (to the extent they exist at all).

Additionally, the Fourth claim for relief, for violation of N.Y. Judiciary Law § 487 is not cognizable with respect to actions taken in a court in Connecticut; accordingly, that claim, too, should be dismissed.

As is clear from the discussion below, what Plaintiffs are presenting here is at best an untimely objection to Arent Fox's pending fee application (as well as a collateral attack on prior fee applications approved by this Court) disguised as a claim for legal malpractice. The claims asserted herein are nothing more than tread-worn attempts to revive discredited attacks on attorney professionalism for pecuniary gain or tactical advantage. Plaintiffs' misguided attempt to revisit those matters already decided by this Court should not be permitted to proceed and the Complaint should be dismissed in its entirety.

## **PROCEDURAL HISTORY**

In an attempt to avoid the preclusive effect of this Court's prior orders, Plaintiffs initially brought this action in the Southern District of New York. Following oral arguments on Defendants' motion to dismiss or, in the alternative, to transfer, Judge John G. Koeltl ordered that the case be transferred to the District of Connecticut with a recommendation that it be referred to the Bankruptcy Court. See transcript and decision dated November 30, 2009 attached hereto as Exhibit A to the Affidavit of Peter N. Wang ("Wang Aff."). In deciding to transfer this action to Connecticut, Judge Koeltl quite pointedly noted that "[t]he bankruptcy court was involved in many of the events surrounding the plaintiffs' complaint. The bankruptcy court approved the sale of assets, authorized payment of fees to the defendants, and entered orders modifying the terms of the sale of assets, all things the plaintiffs wished to challenge." Wang Aff., Ex. A at p. 31.

Pursuant to Judge Koeltl's order, the case was received and filed in the District of

Connecticut on December 11, 2009.  Consistent with Judge Koeltl's recommendation, District

Judge Janet Bond Arterton referred the case to this Court by order dated February 3, 2010.

## RELEVANT FACTS

### The Parties

This case arises out of two related bankruptcies with which this Court is

intimately familiar.  The allegations in the Complaint relate to bankruptcies filed by Debtor First

Connecticut Consulting Group, Case No. 02-50852 (the "First Connecticut Bankruptcy Case")

and by Debtor James J. Licata ("Licata"), Case No. 02-51167 (the "Licata Bankruptcy Case")

(together the "Underlying Cases").  Complaint ¶¶ 9-10.  Plaintiff Richard M. Coan is the Chapter

7 Trustee of the First Connecticut Bankruptcy Case.  Plaintiff Ronald I. Chorches is the Chapter

7 Trustee for the Licata Bankruptcy Case.  Complaint ¶ 11.

When the Underlying Cases were first filed, they were debtor-in-possession

Chapter 11 cases.  Arent Fox served as counsel for both debtors in possession.  Complaint ¶ 12.

The Arent Fox attorney in charge of the case was Robert Grossman[1].  Arent Fox's co-defendant,

Buchanan Ingersoll & Rooney PC ("Buchanan Ingersoll"), was counsel for the Creditors

Committee.  Complaint ¶ 13.  The cases now have been converted to Chapter 7 of the

Bankruptcy Code, and are still pending before this Court.

### The Bankruptcy Court-Ordered Sale to SWJ

In the First Connecticut Bankruptcy Case, prior to conversion, the Debtor sold

substantially all of its assets in a bulk sale to SWJ Holdings LLC ("SWJ").  Complaint ¶¶ 27-28,

---

[1] In 2008, Mr. Grossman was appointed to be a United States Bankruptcy Judge for the
Eastern District of New York.

31, 65-66.  The sale was the result of an auction approved by this Court.  SWJ submitted the

winning bid of $8,950,000.  Complaint ¶¶ 32-34, 36, 38.  After proper notice and hearing, the

sale and the terms thereof were approved by this Court.  Id.  Prior to closing, the deal was recast

several times because of SWJ's failure to perform.  Complaint ¶¶ 41-42, 48, 52, 58, 61-66.  Each

negotiated modification was presented to and approved by this Court and reflected in numerous

orders by this Court.  Id.[2]

Ultimately, the sales agreement was modified so that the Debtor, in exchange for

transferring various assets, received $5.4 million in cash, a Note for $5.85 million and a Deed of

Trust for that amount secured by the assets.  The modified sale and the terms thereof were

specifically approved by this Court, as were all interim modifications.  Complaint ¶¶ 63-66.  On

March 13, 2006 the sale was consummated and First Connecticut actually received $5.4 million

in cash.  Complaint ¶¶ 64-66.  As part of the approved sale, Cynthia Licata, wife of James Licata,

obtained an asset of First Connecticut for her release of claims with respect to other assets of

First Connecticut, which were transferred to SWJ.  Complaint ¶ 69.

### SWJ's Default

When SWJ failed to make the remaining payments due, First Connecticut, with

approval of this Court, foreclosed on the assets.  Since the foreclosure took place over a year ago,

---

[2] In the penultimate recasting, SWJ provided Debtor with a document purportedly from
"Bangkok Bank PLC," which was denominated a "Bank Guaranty."  Complaint ¶ 50.  This
"Bank Guaranty" named a third party Cobra/Ventura Equities LLC ("Cobra") as beneficiary.
Complaint ¶ 51.  Cobra supposedly was providing financing for SWJ's acquisition of the
Debtor's assets.  Complaint ¶ 48.  It is not alleged or explained how this Bank Guaranty was of
any value to First Connecticut or Licata, and in fact, Plaintiffs concede that attempts were made
to collect on the Bank Guaranty to no avail.  Complaint ¶ 53.  Furthermore, any allegation that
Arent Fox improperly released the Bank Guaranty in violation of an order of this Court does not
amount to a claim for malpractice as it implicates counsel's obligation to the Court and not to its
client.

First Connecticut apparently has been unable to sell the assets or derive any further money from such assets. Thus, it has turned to deeper pockets—Arent Fox (and Buchanan Ingersoll)—to seek some recovery.

## The Claims

From what can be gathered from the verbose Complaint, Plaintiffs' allegations can be reduced to four accusations:

1. Arent Fox did not disclose to this Court that at one time Licata, an insider, purportedly held an interest in SWJ, *although the Creditors Committee knew this.*

2. Arent Fox failed to investigate the financial ability of SWJ to complete the sale, *even though this Court and the major constituencies found SWJ to be a "qualified bidder" and the sale to SWJ was approved by order of this Court.*

3. Arent Fox did not correctly determine which bid at the sale auction constituted the "best and highest" bid available, *even though the sale to SWJ was approved by order of this Court as the best and highest offer.*

4. Arent Fox should not have allowed Cynthia Licata to obtain assets of First Connecticut, as per the sale documents, in exchange for a release of the other assets sold to SWJ, *even though that too was disclosed to (and approved by) this Court.*[3]

From these facts, Plaintiffs appear to assert breach of fiduciary duty (First Cause of Action), legal malpractice (Second Cause of Action), breach of contract (Third Cause of Action) and violation of N.Y. Judiciary Law § 487 (Fourth Cause of Action).

---

[3] Arent Fox vigorously disagrees with almost all of the allegations of the Complaint. But for purposes of this motion, the Court must assume, arguendo, the truth of any well-pleaded allegation.

## **ARGUMENT**

**I.     The Complaint Should Be Dismissed In Its Entirety**

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may seek to

have an action dismissed if the complaint fails to state a claim upon which relief may be granted.

On a motion to dismiss, a court must assume the truth of the factual allegations of the complaint

and make all reasonable inferences in favor of the plaintiff.  Smith v. Local 819 I.B.T. Pension

Plan, 291 F.3d 236, 240 (2d Cir. 2002).  While it was once the standard that "a complaint should

not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can

prove no set of facts in support of his claim which would entitle him to relief," "the Supreme

Court has recently stiffened the pleading standards under the Federal Rules." Apace Commc'ns,

Ltd. v. Burke, 522 F.Supp.2d 509, 515 (W.D.N.Y. 2007) (citing  Conley v. Gibson, 355 U.S. 41,

45-46 , 78 S.Ct. 99, 102, 2 L.Ed. 2d 80 (1957)).  Under the current standard, to survive a motion

to dismiss pursuant to Rule 12 (b)(6), the allegations in the complaint must meet the standard of

plausibility rather than conceivability.  Id.  As the Supreme Court announced in Bell Atl. Corp.

v. Twombly,

> While a complaint attacked by a Rule 12 (b)(6) motion to dismiss
> does not need detailed factual allegations,…a plaintiff's obligation
> to provide the grounds of his entitlement to relief requires more
> than labels and conclusions, and a formulaic recitation of a cause
> of action's elements will not do…Factual allegations must be
> enough to raise a right to relief above the speculative level…

550 U.S. 544, 545, 127 S. Ct. 1955, 1959, 167 L.Ed.2d 929 (2007) (internal citations and

quotations omitted).

Twombly thus instructs that a complaint is subject to dismissal where each cause

of action as pled by the plaintiff is not legally plausible on its face.  ATSI Commc'ns, Inc. v.

Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (citing Twombly and holding that in order to

survive a 12(b)(6) motion to dismiss, the plaintiff must provide the grounds upon which the

claim rests by way of factual allegations sufficient "to raise a right to relief above the speculative

level"). As set forth in Twombly, a claim may be sustained only if the plaintiff has "nudged [its]

claims across the line from conceivable to plausible…" 550 U.S. at 570. Furthermore, it has

long been the case that a court will not "permit conclusory statements to substitute for minimally

sufficient factual allegations." Furlong, M.D. v. Long Island Coll. Hosp., 710 F.2d 922, 927 (2d

Cir. 1983) see also Smith, 291 F.3d at 240 (stating that "conclusory allegations or legal

conclusions masquerading as factual conclusions will not suffice to prevent a motion to

dismiss") (internal citations and quotations omitted); Ashcroft v. Iqbal, __ U.S. __, 129 S.Ct.

1937, 1949 (2009) ("[t]hreadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice").

        The Court's scope of review under Rule 12(b)(6) is not entirely restricted to the

four corners of the Complaint. Rule 12(b)(6) permits the Court to take judicial notice of, among

other things, the numerous pleadings and court orders filed in the Underlying Actions. Pani v.

Empire Blue Cross Blue Shield, 152 F.3d 67, 75 (2d Cir. 1998), cert. denied, 525 U.S. 1103

(1999) ("It is well established that a district court may rely on matters of public record in

deciding a motion to dismiss under Rule 12(b)(6)..."); see also Rothman v. Gregor, 220 F.3d 81,

92 (2d Cir. 2000) (taking judicial notice of pleadings in another lawsuit). In addition, the Court

may consider on Rule 12(b)(6) motion the First Amended Asset Purchase Agreement

("FAAPA") itself, since it is referred to extensively in the Complaint, was filed with this Court,

and is an agreement at issue within Plaintiffs' possession. Cortec Indus., Inc. v. Sum Holding

L.P., 949 F.2d 42, 47-48 (2d Cir. 1991), cert. denied, 503 U.S. 960 (1992). See also Chien v.

Skystar Bio Pharms. Co., 566 F. Supp.2d 108, 110 (D. Conn. 2008) (finding that a document is

integral to the complaint and can be considered on a 12(b)(6) motion to dismiss "where the complaint relies heavily upon its terms and effect") (internal quotations and citations omitted).

### A.   The First, Second and Third Claims for Relief
   Fail Because The Plaintiffs are Precluded From
   Litigating Issues Resolved By Previous Orders of This Court

In the Complaint, Plaintiffs seek to re-litigate issues resolved by final orders of this Court approving the sale of the estate's assets.  These orders have not been appealed nor modified since their entry nearly five years ago.  Courts have consistently upheld the finality of such orders against subsequent attack.  Whether the applicable doctrine is that of collateral estoppel, *res judicata*, law of the case, or collateral attack, the Trustees herein are precluded from re-litigating issues resolved by the orders approving the sale in these cases.

In a strikingly similar case, the Seventh Circuit rejected an effort by a trustee to do what the Plaintiffs are attempting here.  Gekas v. Pipin (In re Met-L-Wood Corp.), 861 F. 2d 1012 (7th Cir. 1988).  In that case, prior to the filing of the petition, the secured creditors had arranged for a public foreclosure sale.  The debtor filed a voluntary Chapter 11 petition but wanted the auction to proceed on the scheduled date.  On notice to most of the unsecured creditors, the debtor and the secured creditors moved the court to permit the sale to go forward as advertised.  With the consent of the secured creditors, the lawyer representing an *ad hoc* committee of unsecured creditors, and the debtor, the court therein entered an order permitting the auction to be held.  An auction was held and the court approved the sale with the consent of the aforementioned parties.  Several months after the sale the debtor's case was converted to Chapter 7, the trustee brought suit against the debtor's counsel, the winning bidder, the secured creditors and others alleging that the winning bidder was the undisclosed agent for the debtor's principal and that unsecured creditors had received insufficient notice to permit proper marketing

of the assets.  In fact, the trustee did have evidence that the winning bidder had later sold a

portion of the assets to the debtor's principal.  The bankruptcy court denied as untimely the

trustees motion under Fed. R. Civ. P. 60(b) to vacate the judgment confirming the sale.  The

district court dismissed the suit against the lawyers and others on the basis that the trustee was

barred by collateral estoppel from re-litigating the issues resolved by the order confirming the

sale.  The Seventh Circuit affirmed the decision.  Upholding the dismissal of the suit, Judge

Posner stated that "the suit is a finely disguised collateral attack on the judgment confirming the

sale.  This may be done only by the route provided for collateral attacks on judgments.  After the

time for appeal had run, the validity of the sale was established, even against nonparties to the

sale proceeding."  Id. at 1018.

      The principles of issue preclusion apply in bankruptcy proceedings and prevent a

plaintiff from re-litigating an issue of fact or law that was fully and fairly litigated in a prior

proceeding.  Purdy v. Zeldes, 337 F.3d 253, 258 (2d Cir. 2003).  Under federal law, collateral

estoppel applies when "(1) the identical issue was raised in a previous proceeding; (2) the issue

was actually litigated and decided in the previous proceeding; (3) the party had a full and fair

opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a

valid and final judgment on the merits."  Id. quoting Interoceanica Corp. v. Sound Pilots, Inc.,

107 F.3d 86, 91 (2d Cir. 1997).  For an issue to have been fully and fairly litigated, "it must have

been properly raised by the pleadings or otherwise placed in issue and actually determined in the

prior proceeding."  Evans v. Ottimo, 469 F.3d 278, 282 (2d. Cir. 2006).  A bankruptcy court

order may be given preclusive effect if it was properly noticed, no objections were raised and the

order was not appealed.  See Martin v. O'Conner, 225 B.R. 283, 288-290 (N.D.N.Y. 1998)

(holding that the validity of a sale order could not be challenged on collateral estoppel grounds

because the sale was properly noticed, the judge approved the sale, and the plaintiff had failed to object to the sale or appeal the sale order).

The Trustees are bound by matters litigated by the debtor-in-possession. Specifically, if there is a "substantive legal relationship" between the party bound by the prior finding and the nonparty, which relationship is sometimes referred to as "privity," the nonparty is precluded from relitigating the same issue.  Taylor v. Sturgell, 553 U.S. 880 (2008).  A debtor-in-possession bears essentially the same fiduciary obligation to creditors and shareholders as a trustee.  Wolf v. Weinstein, 372 U.S. 633, 649-652 (1963) (under Bankruptcy Act); Commodity Futures Trading Comm'n v. Weintrab, 471 U.S. 343, 355-358 (1985).  A trustee has standing to represent only the interests of the debtor corporation.  Hirsch v. Arthur Andersen, 72 F.3d 1085, 1093 (2d Cir. 1995); see also In re Community Hosp. of Rockland County, 15 B.R. 785, 786 (Bankr. S.D.N.Y. 1981) (finding the Chapter 7 trustee replaced the debtor-in-possession "so that they are in privity to the extent that their interests coincide...").

As set forth above, the gravamen of the Plaintiffs' claim is that Arent Fox committed legal malpractice: (1) by failing to determine whether any relationship existed among Licata, Cynthia Licata and SWJ; (2) by failing to investigate the financial ability of SWJ to complete the transaction ; (3) by failing to correctly determine which bid constituted the "best and highest" bid available at the auction; and (4) by inappropriately transferring estate assets to Cynthia Licata.  None of these alleged failures are actionable.

### _Conduct Prior to the Sale Approval Order_

On May 26, 2005, the court entered an Order (a) Approving Break-Up Fee and Overbid Protection in Connection With the Sale of Assets, (b) Proving Bid Procedures, (c) Scheduling Auction Sale; and (d) Scheduling Hearing to Consider Approval of the Sale of

Assets Free and Clear of Liens, Claims, Interests and Encumbrances ("Bid Procedures Order").

Doc. ID No. 676; attached hereto as Exhibit B to the Wang Aff.[4]  The Bid Procedures Order was

entered with only one objection, that of a small creditor in one of the estates not represented by

the Plaintiffs.  The Bid Procedures Order states that the Purchaser (SWJ) "shall constitute a

qualified bidder for all purposes and in all respects with regard to the auction, the bidding

procedures and the overall sale process . . ."  Wang. Aff. Ex. B at p. 2.  The Bid Procedures

Order went on to set a date for the hearing on approval of the sale and that, contrary to the

allegations of the Complaint, the Court would approve a sale "to the person or entity that submits

the highest and best offer as determined *by the court*."  (Italics added.)  Wang Aff. Ex. B at p. 3.

      (a)    *The Licata Relationship*

      The Bid Procedures Order puts to rest any claim regarding a possible relationship

Licata may have had with SWJ, as SWJ was determined to be a qualified bidder by the Court.

The issue of Licata's interest in the bidder was before the Court when the Court rendered the

order with the consent of nearly all the parties to the case.  The issue had been raised in one of

the objections by the Moccos (Doc. ID No. 606 at ¶¶ 13-18, attached hereto as Exhibit C to the

Wang Aff.) and was contradicted in an affidavit submitted by Steven Podell (Doc. ID No. 668,

attached hereto as Exhibit D to the Wang. Aff.) in which he swore under oath that he was the

100% owner of SWJ and that James Licata had no interest in SWJ.  He disclosed that he might

establish a relationship with Licata in order to pursue the litigation assets SWJ was purchasing.

      Following an auction, on June 21, 2005 this Court entered an Order Authorizing

and Approving (1) Asset Purchase Agreement, (2) Sale Acquired Assets of the Debtor's Free and

---

[4] "Doc. ID No." refers to the applicable entry on the Court's electronic docket.  For ease of reference, copies of the relevant filings are attached as exhibits to the accompanying Affidavit of Peter N. Wang.

Clear of Liens, Claims and Encumbrances to SWJ Holdings LLC, (3) Assumption and

Assignment To SWJ of Certain Executory Contracts and Unexpired Leases, and (4) Certain

Related Relief (the "Sale Approval Order").  Doc. ID No. 716, attached hereto as Exhibit E to

the Wang Aff.  This Court specifically rejected the alleged involvement of Licata in the

Purchaser in approving the sale.  As set forth in the Order:

> This court and all parties in interest in these cases have been given the opportunity
> to examine the purchaser with respect to its relationship with Licata.  In addition,
> the Asset Purchase Agreement includes as Exhibit H thereto the Transfer,
> Settlement and Release Agreement ("TSRA") dated as of April 25, 2005 between
> Cynthia Licata and the Purchaser.  Moreover the purchaser previously advised the
> seller, the creditor committee, this court and all parties in interest that it is
> negotiating an agreement with EMP Whole Loan One, LLC ("EMP") pursuant to
> which, among other things, the purchaser is acquiring certain claims of EMP and
> its affiliates against the estate.

Wang Aff. Ex. E at p. 7, ¶ M.

> The court having considered the disclosures have been made to this court, this
> court makes the finding and determines that the purchaser is a good faith
> purchaser under Section 363m of the Bankruptcy Code and, as such, is entitled to
> all of the protections afforded thereby.  The purchaser will be acting in good faith
> within the meaning of Section 363(m) of the Bankruptcy Code.

Wang Aff. Ex. E at p. 5, ¶ N.  (citations omitted).

Thus, despite concerns of Licata's involvement, this Court had evidence which, if

believed, countered those concerns. Accordingly, this Court, with the consent of the major

constituencies, made findings which the Plaintiffs cannot now undermine.

(b)   *Failure to Investigate SWJ's Finances*

Any issue with respect to the ability of SWJ to close on the all cash transaction

was foreclosed by the Bid Procedures Order which was consented to by nearly all the parties to

the transaction.  SWJ had made a $400,000 deposit and the sale was not contingent on financing.

The major constituencies agreed and this Court specifically found that SWJ was a "qualified

bidder" for all purposes.  Plaintiffs may not revisit that finding.  Furthermore, as with any

purchase contract, there is an inherent risk of buyer default and the professionals herein are not the guarantors of specific results.

(c)   *Highest and Best Offer*

In accordance with the Bid Procedures Order, the Court ultimately determined that SWJ had submitted the highest and otherwise best bid at the auction.  The entry of the order approving the sale to SWJ had the support of the Official Committee of Unsecured Creditors, the parties with an economic interest in the outcome.  At the sale approval hearing, no party in interest suggested that the sale to SWJ should not be approved because of the existence of a better offer and all present consented to the entry of the Sale Approval Order.  See, Doc. ID No. 728, transcript of sale approval proceedings held before this Court on June 21, 2005, attached hereto as Exhibit F to the Wang. Aff.  As set forth in the Sale Approval Order, the Court found:

> As demonstrated by (i) the testimony and other evidence proffered or addressed at the sale hearing and (ii) the representations of counsel made on the record at the sale hearing, the Debtors and their professionals have marketed the Acquired Assets and the Assumed Contracts and conducted the sale process with respect thereto in compliance with the Bidding Procedures and the Sale Procedures Order.

Wang Aff. Ex. E at p. 5., ¶ F.

The Sale Approval Order went on to find that the purchaser is not an "insider" of any of the debtors and is completely unrelated to the Debtors.  It also found that the sale price under the Asset Purchase Agreement was not controlled by an agreement between potential or actual bidders.  Finally, in contradiction to the Plaintiffs' claims, the Court found:

> [T]he Asset Purchase Agreement was negotiated, proposed and entered into by the Debtor *and consented to by the Creditors Committee on one hand and the Purchaser, on the other hand, without collusion, in good faith and from arms length bargaining positions.*  Neither the Debtor or the Creditors Committee nor the Purchaser have engaged in any conduct that would cause or permit the asset purchase agreement or any part of the transactions to be avoided under Section 363n of the Bankruptcy Code.  (italics added).

Wang Aff. Ex. E at p. 7, ¶ L.  The Court went on to state that through marketing efforts and a

competitive sale process, "the Debtors, the Creditors Committee, and their professionals afforded

interested potential purchasers a full, fair and reasonable opportunity to make a higher and better

offer to purchase the Acquired Assets and the Assumed Contracts."  Wang Aff. Ex. E at p. 8, ¶ P.

Finally, the Court found:

> The aggregate consideration provided by the Purchaser for the Acquired Assets
> pursuant to the Asset Purchase Agreement and the assignment of the Assumed
> Contracts thereunder (i) is fair and reasonable, (ii) the highest and best offer for
> the Acquired Assets and the Assumed Contracts, (iii) will provide a greater
> recovery for the Debtors' creditors than would be provided by any other practical,
> available alternative, and (iv) constitutes reasonably equivalent value and fair
> consideration. . . .The terms and conditions of the Asset Purchase Agreement are
> also fair and reasonable.

Wang Aff. Ex. E at p. 10, ¶ T.

The Court ordered that the terms and provisions of the Asset Purchase Agreement

and the Sale Approval Order "shall be binding in all respects upon, and shall inure to the benefit

of, the debtors, their estates and their creditors . . . notwithstanding any subsequent appointment

of any Trustees."  Wang Aff. Ex. E at p. 27, ¶ 33.

It is beyond dispute that this issue has been finally resolved by this Court and

Plaintiffs cannot now be heard to challenge the sale some five years after this Court approved it.

(d)    *Transfer of Assets to Cynthia Licata*

Plaintiffs make the outrageous allegation that neither the Sale Approval Order nor

the comments of the Defendants to the Court advised the Court that the Transfer Settlement and

Release Agreement ("TSRA") transferred a substantial portion of the assets sold at the Auction

to Licata's wife.  Complaint ¶ 40.  In the Sale Approval Order the Court specifically approved

the TSRA which set forth the assets to be transferred.  Wang Ex. E at p. 7, ¶ M.  When the sale

finally closed in March, 2006 pursuant to the FAAPA, certain assets, disputed interests in limited

partnerships, were transferred to Cynthia Licata in accordance with the Sale Orders.  Thus, the

Trustees' claim that the Defendants breached their obligations to their clients is precluded by the

entry of the Bid Procedures Order and the Sale Approval Order, both of which are final orders.

Despite their appointment nearly four years ago, neither Plaintiff attempted to reopen those

orders.  They are bound by this Court's findings and rulings.

----------------------------

As set forth above, Plaintiffs initially commenced this action in the United States

District Court for the Southern District of New York.  At oral argument before Judge Koeltl on

Defendants' motion to dismiss/transfer, Plaintiffs' counsel advised the Court of his reasons for

commencing this action in a forum other than the Connecticut Bankruptcy Court.  In response to

a question from Judge Koeltl as to why the Plaintiffs had not commenced the action before this

Court in light of allegations that the Defendants had deceived the Court, Plaintiffs' counsel

candidly responded:

> I think intellectually it's difficult to present an appeal to the same
> judge who rendered a decision.  And I think that it allows for a
> differing set of proofs, a differing litigation situation.   And I
> believe that it puts the party who's now coming back as appellant,
> in effect, at a disadvantage to go before the same judge who heard
> argument at the time and say, Oh, we've thought up a new avenue
> here, and we are coming back to you, Judge.  And even though you
> ruled on X, Y, or Z, we are going to ask you to look at it all over
> again.   When it's more clearly, effectively and appropriately
> presented in a trustee, not debtor, but trustee versus attorney clean-
> cut streamlined presentation.

Wang Aff. Ex. A at p. 19.

Plaintiffs' telling admission that they were seeking to overturn prior orders of this

Court based on new arguments is precisely the type of claim that is precluded by collateral

estoppel.

B.    **The First, Second and Third Claims for Relief Fail Because
Plaintiffs Do Not Properly Allege That Arent Fox Caused Them Any Harm**

To recover on a legal malpractice claim, "the plaintiff must establish: (1) the

existence of an attorney-client relationship; (2) the attorney's wrongful act or omission; (3)

causation; and (4) damages . . . ." Mayer v. Biafore, Florek & O'Neill, 245 Conn. 88, 92, 713

A.2d 1267, 1268 (Conn. 1998).[5] Accord, Leeds v. Sealove, No. 87 Civ. 3024, 1988 WL 83401,

at *1 (S.D.N.Y. July 28, 1988); Freschi v. Grand Coal Venture, 564 F.Supp. 414, 415 (S.D.N.Y.

1983). Plaintiffs fail to allege any scenario under which they would have been better off but for

the actions of Arent Fox, and thus, at a minimum, the latter two elements--causation and

damages--are lacking.

As stated above, "[t]hreadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice." Ashcroft, 129 S.Ct. at 1949. Here,

while many acts are alleged, almost all of them are conclusory, such as a general allegation that

Plaintiffs have been harmed by a litany of things that supposedly transpired as a consequence of

Arent Fox's allowing the SWJ sale to go forward. Of course, since the sale was approved by this

Court on notice, that should be the end of it. In any event, assuming every real factual allegation

is taken as true, however, there is no sufficient allegation that Arent Fox prevented the Debtors

from getting greater value for the Estate assets, since Plaintiffs fail to allege specifically that

there were other buyers who were willing and able to buy the assets in question for a higher cash

---

[5] Because the negligence complained of took place in the U.S. Bankruptcy Court for
Connecticut and because the Plaintiffs suffered their alleged harm in Connecticut, Connecticut
law should apply. See Padula v. Lilarn Props. Corp., 84 N.Y.2d 519, 522, 644 N.E.2d 1001,
1002 (N.Y. 1994) ("when the conflicting rules involve the appropriate standards of conduct, [the
New York courts choose] the law of the place of the tort") (internal citations and quotations
omitted).

price.  Absent a plausible allegation that anything Arent Fox did, or did not do, actually caused harm to Plaintiffs, their action fails as a matter of law.

Two alternative potential buyers are mentioned in the Complaint, but the Complaint does not allege that either of these buyers would actually have paid more than SWJ. Thus, it is alleged that a group comprised of Joseph Chetrit, The Chetrit Group, Wennington Realty, Robert Wolf and Read Property Group, denominated in the Complaint as the "Alternate Bid Group," (Complaint ¶ 35) submitted a bid at the auction.  However, there is no allegation that the Alternate Bid Group was willing <u>and</u> <u>able</u> and would in fact <u>have</u> <u>paid</u> <u>more</u> than the $5.4 million SWJ ultimately paid for the assets.[6]  In reality, it is far more likely (and certainly more "plausible" to use the language of <u>Twombly</u>) that the Chetrit bid actually served to <u>increase</u> the SWJ bid by injecting competition, and thereby <u>increased</u> the recovery received by the Estate. Absent a specific allegation that the Alternate Bid Group actually would have paid more money than SWJ, there is no demonstrable harm.

Similarly, there is an allegation that when SWJ initially defaulted, First Connecticut sought approval from this Court to sell the assets to Enterprise Asset Management, Inc. ("Enterprise").  Complaint ¶¶ 54-55, 60.  Once again, there is no allegation that Enterprise was willing and able to pay, and would have paid, more than $5.4 million.  In fact, the Plaintiffs acknowledge that Enterprise elected to abandon its consideration of the sale.  Complaint ¶ 60. Furthermore, interspersed with the Enterprise allegations, there are allegations that Arent Fox allowed transfer of the allegedly bogus Bank Guaranty.  Complaint ¶¶ 56-57, 59.  But this, too, fails to establish damages or causation, precisely because it is alleged that the Bank Guaranty had

---

[6] Furthermore, as is alleged in the Complaint, the Alternate Bid Group failed to comply with the Bid Procedures by not executing a form indicating that its bid was irrevocable for fifteen (15) days.  Complaint ¶¶ 34, 36.

no value.  Complaint ¶ 73.  Furthermore, the Complaint does not allege that the Bank Guaranty

had any bearing on Enterprise pursuing the transaction or on SWJ ultimately defaulting on the

purchase.  Likewise, even assuming that Licata had anything to do with SWJ, or that the SWJ

transaction should not have occurred because Cynthia Licata was part of it (albeit fully

disclosed), there is no allegation that Plaintiffs were any worse off as a result.  In fact, the only

plausible conclusion from the Complaint and the record is exactly the opposite: that the closing

of the sale brought much-needed cash into the estate, was long-fought and hard-won by Debtors’

counsel and Committee Counsel, and was the best of all available results.

Therefore, there is a good reason why Plaintiffs do not allege that either the

Alternate Bid Group or Enterprise would have paid First Connecticut more than $5.4 million but

for the actions of Arent Fox, and instead have attempted to avoid this problem altogether with

artful pleading.  Plaintiffs cannot do so consistent with their Rule 11 obligations because they

know they have no evidence to substantiate their purported damages.  What Plaintiffs have done

is craft a flimsy complaint out of smoke and mirrors, which like all such efforts, vanishes in the

end.  Like many meritless legal malpractice actions, the Monday-morning quarterbacking is all

there is, because there is no case that “but for” the allegations against counsel, a specific better

result would have occurred.  Since they fail to allege any set of facts to explain how they have

suffered any harm, much less how Arent Fox caused such harm, the first three claims for relief

must fail.  To say that the Plaintiffs have failed to “nudge [their] claim across the line from

conceivable to plausible” (Twombly, 550 U.S. at 570) is an understatement.

C.     **The First, Second and Third Claims for Relief Fail
Because the Plaintiffs Do Not Have Standing to Assert Them**

The arguments set forth in Point I.B of BIR’s Motion persuasively demonstrate

why the claims should be dismissed, and we adopt and incorporate them by reference.  As set

forth in detail in BIR's Motion, the Trustees only have standing to sue third parties on claims

belonging to the bankrupt corporation.  Pursuant to the <u>Wagoner</u> rule, however, a bankrupt

corporation does not have standing to sue third parties where the conduct of the third parties is

alleged to have allowed corporate managers to commit fraud.  <u>Shearson Lehman Hutton, Inc. v.</u>

<u>Wagoner</u>, 944 F.2d 114 (2d Cir. 1991).  As such, the Trustees do not have standing to assert the

kind of claims alleged herein.

     **D.**     **The Fourth Claim for Relief Fails Because**
                **<u>N.Y. Judiciary Law § 487 Does Not Apply To Litigation In Connecticut</u>**

        Point II of BIR's Motion demonstrates why the claim should be dismissed, and

we adopt and incorporate those arguments by reference.  BIR's Motion cites the Second Circuit's

decision in <u>Schertenleib v. Traum</u>, 589 F.2d 1156, 1666 (2d Cir. 1978) (emphasis added) and the

following analysis set forth therein is particularly instructive:

> No one questions the power of the State of New York to impose disciplinary sanctions against New York attorneys for acts occurring outside the state that are deemed to render them unfit to practice inside the state.  . . .  **However, we believe that section 487 is not an exercise of that power, but is rather intended to regulate, through criminal and civil sanctions, the conduct of litigation before the New York courts.**  We doubt it was the purpose of the New York State legislature to fasten on its attorneys criminal liability and punitive damages for acts occurring outside the state.  **It seems more likely that the concern is for the integrity of the truth-seeking processes of the New York courts, not for injury to foreign litigants.**

        The foregoing language makes clear that § 487 only regulates conduct before the

New York courts.  The acts complained of here were before a court in Connecticut for

Connecticut clients.  As such, § 487 is inapplicable.

## CONCLUSION

For all the foregoing reasons, it is clear that Plaintiffs have failed to allege any

facts supporting a claim against Arent Fox.  Accordingly, this Court should grant Arent Fox's

motion and dismiss the Complaint with prejudice.

Dated: April 14, 2010

MURTHA CULLINA LLP

/s/ Robert A. White
Robert A. White (ct08277)
CityPlace I – 185 Asylum Street
Hartford, CT  06103
Tel: (860) 240-6000
Fax: (860) 240-6150
E-mail: rwhite@murthalaw.com

FOLEY & LARDNER LLP
Peter N. Wang (admitted pro hac vice)
Douglas S. Heffer (admitted pro hac vice)
90 Park Avenue
New York, NY  10016
Tel.: (212) 682-7474
Fax: (212) 687-2329
E-mail:  pwang@foley.com
E-mail: dheffer@foley.com

.                                              *Attorneys for Defendant Arent Fox LLP*