**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**(Bridgeport Division)**

| | |
|---|---|
| In re<br><br>FIRST CONNECTICUT CONSULTING GROUP, INC.<br>　　　　Debtor.<br>_____<br><br>RICHARD M. COAN, Chapter 7 Trustee Of First Connecticut Consulting Group, Inc., and RONALD I. CHORCHES, Chapter 7 Trustee of James J. Licata,<br><br>　　　　Plaintiffs,<br><br>　　　v.<br><br>ARENT FOX, PLLC and BUCHANAN INGERSOLL & ROONEY, PC,<br><br>　　　　Defendants. | CHAPTER 7<br><br>CASE NO. 02-50852 (AHWS)<br><br><br><br>ADV. PRO. NO. 10-05010<br><br><br><br><br><br><br><br><br><br><br><br>JUNE 11, 2010 |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT**
**OF DEFENDANT ARENT FOX LLP'S MOTION TO DISMISS**

NYC_818547.1

Defendant Arent Fox LLP ("Arent Fox") by and through its undersigned counsel, Foley & Lardner LLP and Murtha Cullina LLP, submits this reply memorandum of law in further support of its motion to dismiss the Verified Complaint ("Complaint") pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6) and 9(b) as made applicable to this action pursuant to Federal Rules of Bankruptcy Procedure 7012(b) and 7009. Defendant Buchanan Ingersoll & Rooney PC ("BIR") has submitted a parallel motion to dismiss, and to the extent indicated infra, Arent Fox joins in and adopts portions of BIR's reply memorandum of law in further support of its motion ("BIR's Reply Brief").

Plaintiffs' opposition brief does absolutely nothing to undercut Arent Fox's motion to dismiss; to the contrary, the brief essentially confirms that the crux of Plaintiffs' claims is an impermissible attempt to revisit Court orders that were entered with the consent of the Committee and the many fractious constituencies in this case. The Complaint in this action tries to undo those orders based on hindsight and revisionist history. The Complaint recites that the Debtor brought forward a buyer who offered $5.5 million for assets of dubious value – disputed interests in real estate and partnerships and litigation claims. Complaint ¶ 28. At the end of a tortuous path, with which this Court is very familiar, navigated successfully by Arent Fox, the Debtors actually received $5.4 million in cash plus a $5.85 million note for these troublesome assets. Complaint ¶ 66. That deal was approved by this Court—but even that, apparently, is not good enough for Plaintiffs.

Plaintiffs seek to hold Debtor's counsel and Committee counsel liable for failing to bring in illusory additional sums. The basis for their claim of damages rests on the *unasserted allegation* that there was another purported interested party who might actually have paid more than the Estates ultimately received. But all this is, is speculation. Part of Arent Fox's motion is

addressed to the fundamental requirement that the Plaintiffs must affirmatively plead that there was an alternative buyer who would <u>in fact</u> have paid the Estates more money.  This is not a technical or formal argument; to the contrary, it is one of substance.  And more to the point, the reason why the Trustees have not made that allegation is because <u>they know it has no basis in fact</u>.

As set forth in greater detail in Arent Fox's moving brief, the first three claims for relief should be dismissed for three independent reasons: first, the Plaintiffs are precluded by the doctrines of collateral estoppel, *res judicata* and collateral attack from relitigating final orders of the Bankruptcy Court; second, the Plaintiffs have not set forth any allegation (much less a plausible one) that the Debtors suffered any damages based on any alleged malpractice; and third, the Trustees do not have standing to prosecute the claims alleged.  Finally, Plaintiffs apparently have abandoned their Fourth claim for relief, for violation of N.Y. Judiciary Law § 487, and it should be dismissed.

The claims asserted here are, in a word, frivolous.  No one knows that better than this Court—which is why, we submit, Plaintiffs were at pains to avoid this Court and improperly stretched to try to bring the action in another forum.  To the extent the Trustees gripe about Arent Fox's performance, this action is nothing more than a premature objection to Arent Fox's pending fee application disguised as a malpractice claim.  For all the reasons set forth in Arent Fox's moving brief, and those recited below, this action should be dismissed on the pleadings as it fails to state any cognizable claim.  The Court should proceed to a hearing on any objection to the fee application that may be made and Arent Fox will defend its performance in that context.

## ARGUMENT

**I.      The Complaint Should Be Dismissed In Its Entirety**

In their opposition papers, Plaintiffs not only cite to the outdated conceivability standard of Conley v. Gibson, 355 U.S. 41, 78 S. Ct. 99 (1957), but they also mischaracterize the impact of Bell Atl. Corp. v. Twombly, 559 U.S. 544, 127 S.Ct. 1955 (2007).  Opp. Brief 4.  The Supreme Court announced a stiffened plausibility standard in Twombly.  Based on the shift set forth in Twombly, the Supreme Court more recently in Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009), "set out a 'two-pronged' approach for courts considering a motion to dismiss.  First, the court accepts plaintiff's factual allegations as true and draws all reasonable inferences in its favor…Second, the court determines whether the well-pleaded factual allegations…plausibly give rise to an entitlement of relief."  Intellectual Capital Partner v. Institutional Credit Partners LLC, No. 08 Civ. 10580, 2009 WL 1974392, *3 (S.D.N.Y. July 8, 2009) (citing Iqbal).  The Complaint in this case utterly fails to meet this standard and Plaintiffs do little, if anything, to rehabilitate it by way of explanation in opposition to the instant motion.

While Plaintiffs' Complaint suffers from a variety of defects, it fails entirely to satisfy the second prong of the Iqbal test.  Far from setting forth "plausible" claims, the Complaint is nothing more than an exercise in negative spin of innocent facts.  In a misguided attempt to avoid the impact of several of Arent Fox's arguments, Plaintiffs resort to misdirection, littering their opposition brief with another round of unsupported and wholly conclusory allegations outside the record.  Without submitting a supporting affidavit, Plaintiffs put forth a laundry list of new allegations of misconduct on the part of Arent Fox and BIR that are nowhere to be found in the Complaint.  Opp. Brief at 2-3.  Needless to say, a plaintiff cannot seek to amend its complaint by way of a memorandum of law.  See Wright v. Ernst & Young LLP, 152 F.3d 169, 178 (2d Cir. 1998) (holding that party may not raise new claims in its response to a

dispositive motion). Infusing their Brief with colorful (but unsubstantiated) allegations of wrongdoing does not rescue the Complaint. Aiken v. Nixon, 236 F.Supp.2d 211, 221 (N.D.N.Y. 2002) (stating that "a plaintiff cannot…defeat a motion to dismiss with conclusory allegations, unwarranted speculation, unsupported deductions, or legal arguments cast as factual pleadings"); Iqbal, 129 S. Ct. at 1949 (stating that it is no longer sufficient for a plaintiff to make "an unadorned, the defendant-unlawfully-harmed-me accusation," rather the claim must be "plausible" in the context of the alleged cause of action).

     A.    **The First, Second and Third Claims For Relief Fail Because The Plaintiffs are Barred From Relitigating The Conclusions Contained In Various Orders Of The Court**

It boils down to this: under the disguise of a malpractice claim, Plaintiffs seek to relitigate orders previously entered by the Court and endorsed by the Committee and other parties in interest in the case. They may not do so. In order after order, this Court found and determined that the sale to SWJ Holdings LLC ("SWJ" or "Buyer") was in the best interests of the Estates. This was a finding agreed to by the Committee and other constituencies. Plaintiffs claim they are not seeking to relitigate this issue because this is a malpractice case. In fact, the Debtor's counsel is obligated to assist the debtors-in-possession to fulfill their fiduciary duties to dispose of assets in the best interests of the estates. Confronted with Court findings that the sale was in the best interests of the estates, that SWJ was a qualified bidder, and that the settlement with Cynthia Licata was in the best interests of the estates, the Trustees cannot allege Arent Fox's conduct was wrongful – an essential element of a malpractice claim. Mayer v. Biafore, Florek & O'Neill, 245 Conn. 88, 92 (1998); Peterson v. Scott (In re Scott), 172 F.3d 959, 967-68 (7th Cir. 1999) (DIP fulfills fiduciary duties by complying with the Bankruptcy Code); Fulton

State Bank v. Schipper (In re Schipper), 933 F.2d 513, 516 (7th Cir. 1991) (same).  If the Debtor has fulfilled its duty, its counsel necessarily has done the same.

The Trustees' central argument alleges that Defendants failed to make certain disclosures to the Court.  Without question, counsel has an ethical duty of candor to the Court.  Model Rules of Professional Conduct, Rule 3.3.  Putting aside the fact that Arent Fox vehemently denies that it did anything to violate its ethical duty, such duty is an independent obligation of counsel to the Court and not one owed to the client.  Therefore, any breach of that duty does not give rise to a claim of malpractice.  In re Consupak, Inc., 87 B.R. 529, 548 (Bankr. N.D. Ill. 1988) (holding that a breach of ethical rules should be addressed through court's oversight of fee application); Vining v. Ward (In re Ward), 894 F.2d 771, 776 (5th Cir. 1990) (finding that a duty of candor to the court is based on ethics and does not create a cause of action on the part of a trustee absent an intent to defraud).

Even more to the point, the Trustees have alleged that Committee counsel, acting independently from the Debtors, also breached its duty by agreeing to the sale to SWJ instead of to some unnamed and ephemeral buyer that purportedly could have produced a better result.  But at no point do the Trustees allege that Committee counsel was acting without authorization from the Committee or that Arent Fox somehow misled Committee counsel into supporting an ill-advised sale.  The fact that the debtor-in-possession, assisted by counsel, reached an agreement with the Committee confirms that Arent Fox was able to achieve consensus among the key constituencies in the case--the hallmark of a successful bankruptcy proceeding and an undeniable sign that counsel's professional obligations were fulfilled, not breached.

Although the Trustees assert that they are not seeking to set aside prior orders of the Court, that is exactly what they are trying to do.  They contend that the prior orders of the

Court do not preclude a malpractice action because the Defendants withheld information from the Court. That is precisely the sort of evidence that might--if proven--justify a motion to set aside an order under Rule 60(b) of the Federal Rules of Civil Procedure. Despite the fact that the one of the Trustees was appointed within months of entry of the final sale order, and there is no allegation in the Complaint that the supposedly withheld information was not known to the Trustee within a year of entry of the order, the Trustee failed to make a timely motion to set aside the sale order. In similar circumstances the Seventh Circuit found such arguments to be a "finely disguised collateral attack on the judgment confirming the sale." Gekas v. Pipin (In re Met-L-Wood), 861 F.2d 1012, 1018 (7th Cir. 1988).

The Trustees' assertion that Arent Fox and Committee counsel failed to disclose that Licata once had an interest in the buyer has been addressed. As set forth in Arent Fox's moving papers, the affidavit of Steven Podell clearly stated that he was the 100% owner of SWJ and that the buyer may have to consult with Licata with respect to the disposition of the problematic assets. Thus, to the extent there was a connection between Licata and the buyer, it was disclosed. This apparently was of no material concern to the true parties in interest, the creditors. Furthermore, this Court's Bid Procedures Order clearly recites that "[t]his court and all parties in interest in these cases have been given the opportunity to examine the purchaser with respect to its relationship with Licata." Moving Brief at 12.

The Trustees allege in their Brief (but not the Complaint) that Licata's wife received $1 million from the estates' assets. The fact that Cynthia Licata was to receive certain assets was explicitly set forth in the Transfer, Settlement and Release Agreement ("TSRA") and approved by the Court with the consent of the Committee and the creditors. The distribution to Cynthia Licata was disclosed to the Court and the creditors and ultimately approved by the

NYC_818547.1                              6

Court. The Complaint is devoid of any claim that a sale to another bidder could have been accomplished free of any payment to Cynthia Licata.

> **B. The First, Second And Third Claims for Relief Fail Because Plaintiffs Do Not Properly Allege That Arent Fox Caused Them Any Harm**

The elements of a legal malpractice claim are straightforward. To prevail, the plaintiff must establish: "(1) the existence of an attorney-client relationship; (2) the attorney's wrongful act or omission; (3) causation; and (4) damages." Updike, Kelly & Spellacy, P.C. v. Beckett, 269 Conn. 613, 649, 850 A.2d 145 (Conn. 2004) (internal quotations and citations omitted). To prove causation, the plaintiff "must demonstrate that he would have been successful in pursuing his claim or defense but for the defendant's wrongful act or omission." Gray v. Weinstein, 110 Conn. App. 763, 772, 955 A.2d 1246 (Conn. App. 2008) (internal quotations and citations omitted). Absent a showing of actual damages, there can be no cause of action for legal malpractice. As set forth at length in Arent Fox's Moving Brief, Plaintiffs fail to allege any plausible scenario under which they would have been better off but for the actions of Arent Fox (or, put another way, how they were damaged by Arent Fox's alleged "malpractice").

In their opposition, Plaintiffs list four items that supposedly support a claim for actual damages. Opp. Brief 13. Once again, Arent Fox is left guessing as to how those claims amount to actual damages where there is no allegation that the Alternate Bid Group was willing and able to pay, and would have paid, more than the $5.4 million actually recovered by the Estates. Plaintiffs argue that they "set forth clearly, certainly and substantially in the Complaint" that the Alternate Bid Group would have paid more money but saying it does not make it so.[1]

---

[1] One of the more troubling allegations is that Arent Fox failed to bind the Alternate Bid Group by refusing to require the Alternate Bid Group to sign a memorandum indicating that its offer was irrevocable for a certain period of time. Opp. Brief 13, Complaint ¶ 98. What is

Opp. Brief 13. The Complaint alleges only that the Alternate Bid Group made a <u>bid</u> for the assets, an allegation that Arent Fox does not dispute. Where the Complaint fails is the absence of any allegation that the Alternate Bid Group was in a position to <u>pay</u> the amount of their bid and would have done so—that is, that there in fact was money which was left on the table as a result of Arent Fox's "malpractice". The allegation is nonsense. In fact, Arent Fox's efforts to close this deal in the face of hurdle after hurdle are well-known to both the Trustees and this Court. As between the sale of the assets to some ephemeral alternate buyer, and a hard fought sale that brought significant cash into the Estates, it is clear Arent Fox did its job—and did it well.

### C. The First, Second and Third Claims for Relief Fail Because the Plaintiffs Do Not Have Standing to Assert Them

In response to Arent Fox's argument that Plaintiffs lack standing to assert the first three claims for relief based on the <u>Wagoner</u> rule, Plaintiffs include a <u>non sequitur</u> argument about privity. Arent Fox never made any claim that there was a lack of privity between the Debtors and itself. What Arent Fox did argue, however, was that the <u>Wagoner</u> rule precludes a bankrupt corporation from suing third parties where the conduct of the third parties is alleged to have allowed corporate managers to commit fraud. <u>Shearson Lehman Hutton, Inc. v. Wagoner</u>, 944 F.2d 114 (2d Cir. 1991). Were these claims permitted to be brought here by the Trustees on behalf of the Debtors, the Debtors would effectively benefit from their own misconduct. Fairly put, if the client corporation engaged in fraud through its manager, the <u>Wagoner</u> rule prohibits that client from asserting a claim for malpractice flowing from the manager's fraud.

---

missing is any allegation that the Alternate Bid Group was willing to sign such a commitment. To be sure, if the Alternate Bid Group wanted to sign the agreement, they were at liberty to do so.

By way of further argument, Arent Fox adopts and incorporates by reference Point III of BIR's Reply Brief.

### D. The Fourth Claim for Relief Fails Because N.Y. Judiciary Law § 487 Does Not Apply To Litigation In Connecticut

Plaintiffs have not even attempted to address Defendants' argument that the New York Judiciary Law, under which Plaintiffs' Fourth Claim for Relief is brought, does not apply to acts that took place before a court in Connecticut. Under the circumstances, we regard that Plaintiffs have recognized that this claim is frivolous, and have abandoned it.

### CONCLUSION

For all the foregoing reasons, it is clear that Plaintiffs have failed to allege any facts supporting a claim against Arent Fox. Accordingly, this Court should grant Arent Fox's motion and dismiss the Complaint with prejudice.

Dated: June 11, 2010

> MURTHA CULLINA LLP
>
> /s/ Robert A. White
> Robert A. White (ct08277)
> CityPlace I – 185 Asylum Street
> Hartford, CT  06103
> Tel: (860) 240-6000
> Fax: (860) 240-6150
> E-mail: rwhite@murthalaw.com
>
> FOLEY & LARDNER LLP
> Peter N. Wang (admitted pro hac vice)
> Douglas S. Heffer (admitted pro hac vice)
> 90 Park Avenue
> New York, NY  10016
> Tel.: (212) 682-7474
> Fax: (212) 687-2329
> E-mail:  pwang@foley.com
> E-mail: dheffer@foley.com
>
> *Attorneys for Defendant Arent Fox LLP*

.